UNITED STATES, Appellee

v.

MEREDITH T. MUNDY, Private–1, U. S. Army, Appellant

2 USCMA 500, 9 CMR 130

No. 1447

Decided May 12, 1953

Lt Col Herman P. Goebel, Jr., U. S. Army, Lt Col Edgar R. Minnick, U. S. Army, 1st Lt Bernard Landman, U. S. Army, 1st Lt Benjamin Feld, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, for Appellee.

## Opinion of the Court

Robert E. Quinn, Chief Judge:

The petitioner was tried by general court-martial in Munich, Germany, on a charge alleging assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. Upon his conviction of the lesser included offense of assault with a dangerous weapon, in violation of Article 128, 50 USC § 722, he was sentenced to dishonorable discharge, total forfeitures and confinement at hard labor for two years.

After approval by the convening authority, an Army board of review affirmed the findings and sentence. We granted accused's petition for review, limiting our consideration to the following issues:

"1. Whether the record as a whole reasonably required an instruction on careless discharge of firearms as a lesser included offense.

"2. Whether, assuming such instruction was required by the record, defense counsel waived the same."

The factual background of the instant case is as follows: What commenced as horse-play between the accused and the victim of the assault developed into a heated argument in which blows were exchanged. This altercation was terminated when a noncommissioned officer intervened to separate the parties, and the accused repaired to his quarters. There he procured a carbine, and about one half hour later came upon the victim in a pool hall. Raising the weapon to a positon of port arms, he pulled back the bolt and a cartridge was ejected. Immediately thereafter three shots were fired over the head of the victim, the bullets lodging in the wall behind him. In his testimony before the trial court, the accused asserted he approached the victim for the purpose of effecting an understanding, because the victim had earlier threatened to shoot him. Denying knowledge that the weapon was loaded, he claimed that its discharge was accidental, and occasioned by the surprise he experienced when the cartridge was ejected.

For the purposes of this opinion, in view of the conclusion we reach in our consideration of the second question certified, we assume, arguendo, but do not expressly determine, that the evidence fairly raised the issue of the lesser included offense of careless discharge of a firearm. We therefore proceed immediately to the question of waiver.

In United States v. Russell L. Williams, (No. 133), 2 CMR 92, decided February 21, 1952, we de- █ clared that the obligation of the law officer to instruct the court on the essential elements of the offense charged is imposed by Article 51(c) of the Uniform Code of Military Justice, 50 USC § 626, and failure to comply with its mandate constitutes error as a matter of law. Because of the source of this duty and the correlative right granted the accused to be tried by the standards which Congress has prescribed, we further declared that the duty is not lessened, nor the right lost to the accused, by a mere failure to object to, or to request, instructions. The application of this principle was indicated in other decisions of this Court embracing instances of failure to instruct on the elements of the offense charged, on lesser included offenses and affirmative defenses. United States v. Rhoden, (No. 153), 2 CMR 99, decided February 26, 1952; United States v. Cromartie, (No. 374), 4 CMR 143, decided August 6, 1952; United States v. Strong, (No. 244), 5 CMR 55, decided August 27, 1952; United States v. Charles F. Simmons, (No. 505), 5 CMR 119, decided September 26, 1952. From the outset we carefully noted that our refusal to apply the doctrine of waiver was not absolute. In United States v. Russell L. Williams, supra, this warning is found:

". . . . But where a law officer fails to instruct properly without objection by defense counsel, such counsel may well be proceeding at his peril in view of the statutory provision that a finding or sentence of a court-martial shall not be held incorrect on the ground of an error of law unless the error materially affects the substantial rights of the accused. It is entirely conceivable that the instructions of a law officer in a particular case may not be entirely correct, but at the same time the showing of record may be such, that regardless of the error, there could be no substantial prejudice to the accused. For that reason we cannot emphasize too strongly the necessity of objection at the proper time. . . ."

Again in United States v. Rhoden, supra, we stated:

"In discussing the question of waiver by failure to request, or by failure to except, we go no further than do the Federal circuit courts of appeal and intentionally limit this discussion to the failure of the court to instruct on the essential elements of offenses alleged and embraced within the evidence. Clarification of instructions given, theories of the parties, specific points developed through the evidence, and special defenses may be controlled by a different rule. . . ."

Finally in United States v. Strong, supra, in discussing an instruction in which the law officer referred the court to the appropriate paragraph of the Manual, we held such error was not waived by a mere failure to object. Again we cautioned:

". . . . Of course we not mean to say in this connection that a defense counsel may under no circumstances effect a valid waiver in a situation similar to the present one. . . . ."

While it is true that a mere failure to object to erroneous instructions or to request proper instructions affirmatively required by the Uniform Code of Military Justice or the Manual for Courts-Martial, United States, 1951, does not constitute a waiver, the general rule consistently applied throughout the criminal courts of civilian jurisdictions is that a valid objection to instructions may be waived by *affirmative* action of the accused's counsel. Boyd v. United States, 271 US 104, 108, 70 L ed 857, 46 S Ct 442; Johnson v. United States, 318 US 189, 200, 87 L ed 704, 63 S Ct 549; United States v. Manton, 107 F2d 834, 848 (CA2d Cir); Barnes v. States, 46 Okla Crim 446, 286 Pac 21; State v. Rouse, 138 SC 98, 135 SE 641.

Mr. Justice Douglas speaking for the Supreme Court in Johnson v. United States, supra, described the basis of the doctrine thusly:

". . . . we are not dealing here with inadvertence or oversight. . . . ". . . We cannot permit an accused to elect to pursue one course at

the trial and then, when that has proved to be unprofitable, to insist on appeal that the course which he rejected at the trial be reopened to him. However unwise the first choice may have been, the range of waiver is wide. Since the protection which could have been obtained was plainly waived, the accused cannot now be heard to charge the court with depriving him of a fair trial. The court only followed the course which he himself helped to chart and in which he acquiesced until the case was argued on appeal. . . ."

Of interest as well is the language found in United States v. Manton, supra:

"If the failure to enter an exception or assign error had been a mere inadvertence the matter might stand in a different light. But that view cannot be indulged. Plainly enough, counsel consciously and intentionally failed to save the point and led the trial judge to understand that counsel was satisfied. We see no warrant for the exercise of our discretion to set aside standing rules, so necessary to the due and orderly administration of justice, and review the challenge to the legal accuracy of the charge where, as here, the failure of the judge to follow the text of the requested instruction was, at the last, induced by the action of counsel . . . ."

The foregoing doctrine of waiver enunciated in the cited case is peculiarly applicable to instances involving an affirmative, calculated, and designed course of action by a defense counsel before a general court-martial relative to instructions on lesser included offenses. Our rule, and the rule universally applied to trials by jury, is that a duty to instruct on such offenses arises only when the question of its commission is reasonably raised by the evidence. As indicated by the decisions, this determination frequently presents a very close question. In many of these cases the trial court and the appellate tribunals have been guided as much by the theory upon which the defense was conducted, as indicated by the requests or statements of the defense counsel, as by

the affirmative testimony of the accused.

In the instant case prior to advising the court as required by Article 51(c), supra, the law officer conferred with counsel and the accused out of the hearing of the court for the purpose of discussing instructions on lesser included offenses. To each attempt to determine his theory on the lesser included offenses in issue, the defense counsel replied:

". . . The defense would leave it up to the law officer, without submitting any specific recommendations or committing itself one way or the other.

• • • • • •

"The defense will consent to the ruling of the law officer. . . ."

Finally when the law officer indicated an intention to instruct on the offense of willful discharge of a firearm, the defense counsel asserted that if such instruction were given, careless discharge of a firearm necessarily should be considered a lesser included offense. The law officer then instructed the court on the essential elements of the offense charged and instructed as well on the elements of the lesser included offenses of assault to commit voluntary manslaughter, assault with a dangerous weapon and willful discharge of a firearm under circumstances such as to endanger life. Instructions on the elements of careless discharge of a firearm were initially imparted, but subsequently withdrawn. Upon withdrawing that offense from the court's consideration, the law officer asked whether either counsel objected or had any requests for additional instructions. To this the defense counsel replied "None by the defense."

Obviously the conduct of the defense counsel in this instance was not a mere failure to object, or to request appropriate instructions. His actions were affirmative, deliberate and evidential of a conscious design. The only reasonable inference to be drawn from these tactics is that he did not desire the lesser included offense submitted for the court's consideration, on the theory that, by eliminating a showing of willfulness, he

**503**

hoped to obtain a complete acquittal. Necessarily a certain risk attends all tactics at trial level. When carefully considered tactics fail, the defense cannot be permitted to seek, upon appeal, further opportunity to indulge its tactical guesses at a new trial.

We conclude from the foregoing that when defense counsel consciously and affirmatively causes the removal from the court's consideration of the issue of the commission of an offense substantially lesser than the offense charged, he thereby waives his right to have the court instructed thereon. There was no error prejudicial to the substantial rights of the accused.

The second issue is answered in the affirmative and the decision of the board of review is affirmed.

Judge LATIMER concurs.

BROSMAN, Judge (concurring in the result):

I concur in the result reached by my brothers in this case.

Because of my views concerning the dangers of extending the principle of waiver too fast and too far in the area of instructions, I have scrutinized the present record with a good deal of care. I have concluded, however, that nothing done here is inconsistent with the position taken in my separate opinion in United States v. Charles E. Smith (No. 486), 9 CMR 70, decided May 5, 1953, and expressed elsewhere as well.

The background against which defense counsel's conduct must be appraised requires the conclusion that he acted knowingly. Too, all that he said and did is consistent with the interpretation placed on his actions in the majority opinion. At the very least, it seems to me, he sought to deny any function of guidance in the delivery of instructions. While I believe the principal burden of administering a trial by court-martial rests firmly on the shoulders of the law officer, I have no disposition whatever to relieve defense counsel of all responsibility — particularly where, as here, his aid was sought.